IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BOBBI WEAVER, as Trustee Ad Litem )
and as Executor of the estate )
of JOHN WEAVER, )
)
        Plaintiff, )
)
        vs. ) Civil Action No. 08-411
)
UNIVERSITY OF PITTSBURGH )
MEDICAL CENTER, )
)
        Defendant. )

## **MEMORANDUM OPINION**

Pending before the Court is a Motion to Dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) filed by University of
Pittsburgh Medical Center ("UPMC.") For the reasons discussed
below, the Motion is denied.

## **I. BACKGROUND**

### A. Factual History[1]

On November 26, 2006, John Patrick Weaver, a resident of
Toronto, Ohio, was admitted to Trinity Medical Center West
("Trinity") in that area, complaining of flu-like symptoms with
high fever and chills. When he developed jaundice, medical
personnel concluded he was suffering from an undiagnosed liver
virus and a liver biopsy was performed shortly after noon on
December 1, 2006. At that point, it was determined that Mr. Weaver

---

[1]   The facts in this section are taken from the Complaint.

should be transferred to UPMC in Pittsburgh, Pennsylvania, for further treatment of his still unknown liver condition.

Mr. Weaver was admitted to UPMC the same evening, accompanied by his wife, Plaintiff Bobbi Weaver, and his sister. The receiving doctor, a hepatology fellow, ordered an ultrasound to check for liver hemorrhage, but for reasons which are unexplained in the Complaint, no such test was performed.

During his initial examination, Mr. Weaver complained of a temporary "black out" while being weighed. Another doctor named Janeski ordered immediate lab work following a drop in Mr. Weaver's blood pressure and an increase in his oxygen needs. Later that evening, yet another doctor, Lontoc, noted Mr. Weaver's hemoglobin and hematocrit ("H&H") were significantly lower than those reported in his chart from Trinity on November 26, 2006. Dr. Lontoc did not provide any other care at this time.

By 12:30 a.m. on December 2, Mr. Weaver had reported "blacking out for a sec" while lying down, his pulse rate had increased significantly, and his blood pressure had again dropped. Although more tests were ordered, no other specialized care was provided. At 3:30 a.m. the same day, Mr. Weaver's wife and sister reported to UPMC staff that his abdomen was severely distended. At 5:15 a.m., a nurse "called a code blue," and he was admitted to the UPMC Intensive Care Unit later that morning.

Dr. Matthew R. Rosengart began preparation for surgery and

2

noted in Mr. Weaver's chart that he believed, based on the H&H decrease and the abdominal distension, that the patient had been bleeding into his abdomen since his liver biopsy on December 1, 2006. He further believed Mr. Weaver was experiencing abdominal compartment syndrome ("ACS")[2] with signs of compromised lung and kidney function. Dr. Rosengart began surgery to drain the abdomen and repair the internal bleeding about 11:25 a.m. on December 2, 2006. Approximately three liters of blood were removed from his abdomen. Consistent with the medical staff's conclusion that further additional surgery would be necessary, a wound care sponge was purposely left inside Mr. Weaver's abdomen and the wound was not fully closed.

Dr. Rosengart told Mr. Weaver's family that there was no visual sign of liver dysfunction. He also told them that there was still a "trickle of a bleed" in the patient's abdomen and explained why the incision was not completely closed. Dr. Rosengart told the family the next 24 hours would be critical, but did not tell them that he suspected ACS had damaged Mr. Weaver's internal organs.

About 24 hours later, a second surgery was performed; Dr. Rosengart noted that approximately two more liters of blood were

---

[2] According to the Complaint, ACS is defined as a severe increase in the pressure within the abdomen such that a patient's internal organs begin to fail and malfunction. Untreated, this medical emergency has a high mortality rate. Treatments include sedation, stomach tubation to remove fluid and air, abdominal tubation to remove fluid or blood, and opening the abdomen to reduce the pressure. (Complaint, ¶ 24.)

removed. A liver transplant specialist subsequently told the family that he expected Mr. Weaver would recover and he would not need a liver transplant. A second doctor, however, told them Mr. Weaver was having trouble breathing and was unlikely to improve. Mrs. Weaver was never told that her husband's internal bleeding had damaged his lung and kidney function, even though these notes were made in his medical chart.

John Weaver died at 8:31 a.m. on December 4, 2006, from multi-system organ failure, hypotension as a consequence of liver hemorrhage, and the additional contributing factors of hepatitis and acute respiratory distress syndrome.

## B. Procedural History

On March 25, 2008, Bobbi Weaver, John Weaver's widow and executrix of his estate, filed suit in this Court against UPMC, alleging three causes of action arising from her husband's death. In Count I, Plaintiff contends that Defendant's negligent, careless and indifferent care was the cause of his wrongful death; she seeks all damages allowable by law for herself and for any other statutory beneficiary entitled to recover. In Count II, Plaintiff claims UPMC was corporately negligent and that its deviations from the standard of care included a number of failures by the hospital administration in establishing proper medical policies and procedures, assuring that those policies were followed, and in selecting, training and supervising its employees. Plaintiff

4

therefore seeks damages (including punitive damages) pursuant to 42 Pa.C.S. § 8302, Pennsylvania's survival action statute. In Count III, Plaintiff alleges negligent infliction of emotional distress while present with her husband at UPMC, during which time she witnessed his deterioration and ultimate demise.

On June 2, 2008, UPMC filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and a brief in support thereof (Docket No. 12, "Def.'s Brief.") At the Court's direction, Plaintiff filed a response on June 24, 2008 (Docket No. 15, "Plf.'s Resp.") The matter is now ripe for decision.

## II.  JURISDICTION AND VENUE

Mrs. Weaver is a resident of Toronto, Ohio; UPMC is a citizen of Pennsylvania with a principal place of business in Pittsburgh, Pennsylvania; the amount in controversy is greater than $75,000. This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is appropriate in this district inasmuch as a substantial portion of the events which give rise to Plaintiff's suit occurred in this district. 28 U.S.C. § 1391(b)(2).

## III. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant moves to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In the wake of Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Third Circuit Court of Appeals has refined the standard by which

5

such motions are to be considered.  *See* <u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008).  In a more recent case, the Court noted that when it had decided <u>Phillips</u>,

> [a]lthough the exact parameters of the <u>Twombly</u> decision were not yet known, we read <u>Twombly</u> to mean that "factual allegations must be enough to raise a right to relief above the speculative level.  In other words, "stating. . .a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.

*See* <u>Wilkerson v. New Media Tech. Charter Sch., Inc.</u>, 522 F.3d 315 (3d Cir. 2008), *citing* <u>Phillips</u>, 515 F.3d at 234, *quoting* <u>Twombly</u>, 127 S.Ct. at 1965.

"After <u>Twombly</u>, it is no longer sufficient to allege mere elements of a cause of action; instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" <u>Phillips</u>, 515 F.3d at 233, *quoting* <u>Twombly</u>, 127 S.Ct. at 1969 n. 8.  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Id.</u> at 234, *quoting* <u>Twombly</u>, 127 S.Ct. at 1965.

However, nothing in <u>Phillips</u> or <u>Twombly</u> has changed other pleading standards for a Rule 12(b)(6) motion to dismiss.  That is, <u>Phillips</u> noted the Supreme Court in <u>Twombly</u> did not impose a new heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See* <u>Phillips</u>, 515 F.3d at 231, *citing* <u>Twombly</u>, 127 S.Ct. at 1964.  Second, the Supreme Court did

6

not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, id., citing Twombly, id. at 1964-65 and 1969 n.8. Phillips also noted that while the Supreme Court did not address the previously established rule about drawing all reasonable inferences in favor of the plaintiff when considering a motion to dismiss, it concluded "we do not read [the Twombly] decision to undermine that principle." Id. at 231.

## IV.  LEGAL ANALYSIS

In its motion to dismiss, UPMC raises three arguments:

1. Plaintiff failed to timely file a proper certificate of merit as required by Pennsylvania law; as a result, Count II, her corporate negligence claim, must be dismissed;

2. Plaintiff's negligent infliction of emotional distress claim must be dismissed because she failed to allege (1) an "identifiable traumatic incident" and (2) when the negligence occurred, she appreciated the fact that what she was witnessing was, in fact, negligent conduct; and

3. Plaintiff's claim for punitive damages in Count II must be dismissed inasmuch as the allegations of the Complaint support no more than a finding of ordinary negligence, a level insufficient to award punitive damages

We consider each of these arguments in turn.

### A.  Failure to File a Proper Certificate of Merit

On January 27, 2003, the Pennsylvania Supreme Court adopted a rule of civil procedure, effective immediately, which provides that within 60 days following a claim of professional

7

liability brought against certain designated professionals,[3] the plaintiff must file a certificate of merit ("COM") with the court hearing the case. Pa.R.Civ.P. 1042.3 and 1042.1. Where the complaint alleges that a licensed professional has deviated from the acceptable professional standard, the certificate of merit must attest to one of the following:

    (1) an appropriate licensed professional has opined in writing that there is "a reasonable probability" that the care, skill, or knowledge associated with the treatment, practice or work of the defendant fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

    (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard; or

    (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.Civ.P. 1042.3(a).

The plaintiff may move to extend the time for filing a certificate of merit for as much as 60 additional days for good cause. However, such a motion must be made on or before the filing date the plaintiff seeks to extend. If the plaintiff fails to comply with the time requirements for filing the certificate of merit, the defendant may direct the state court prothonotary to

---

[3] "License professional" includes health care providers, accountants, architects, chiropractors, dentists, engineers or land surveyors, nurses, optometrists, pharmacists, physical therapists, psychologists, veterinarians, and lawyers. Pa.R.Civ.P. 1042.1(b).

enter a judgment of *non pros*. *See* Pa.R.Civ.P. 1042.6.

Pennsylvania federal courts have concluded that the COM rule is substantive law to be applied when sitting in diversity. *See*, e.g., Iwanejko v. Cohen & Grigsby, P.C., No. 06-4471, 2007 U.S. App. LEXIS 23873, *12 (3d Cir. Oct. 11, 2007) (district court correctly applied Rule 1042.3 as substantive state law); Keybank Nat'l Ass'n v. Reidbord, CA No. 05-144, 2005 U.S. Dist. LEXIS 29936, *27-*28 (W.D. Pa. Nov. 29, 2005) (agreeing Rule 1042.3 should be applied as substantive law as provided in Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)); Gazi Abdulhay v. Bethlehem Med. Arts, L.P., CA No. 03-4347, 2005 U.S. Dist. LEXIS 21785, *20 (E.D. Pa. Sept. 27, 2005) ("Pennsylvania Rule 1042.3 mandating a certificate of merit in professional negligence claims is substantive [law] under the *Erie Rule* and must be applied as such by the court"); and Schils Am. Acquisition Corp. v. Schils BV, CA No. 05-588, 2006 U.S. Dist. LEXIS 72090, *8-*9 (M.D. Pa. Oct. 3, 2006) (discussing the rule as substantive law.)

While the failure to file a COM in a Pennsylvania state court may result in immediate involuntary dismissal of the plaintiff's claims through a judgment of *non pros*, such a procedural device does not exist in the federal system. However, federal courts have concluded that the same result may be achieved through a motion to dismiss. *See*, e.g. Butler v. Fochios, CA No. 07-1840, 2008 U.S. Dist. LEXIS 20333 (M.D. Pa. Mar. 12, 2008); Holbrook v. Woodham, CA

No. 05-304, 2007 U.S. Dist. LEXIS 50966 (W.D. Pa. July 13, 2007);
and <u>Bresnahan v. Schenker</u>, 498 F. Supp.2d 758, 760 (E.D. Pa. 2007).

A certificate of merit is required in cases alleging corporate negligence on the part of medical providers other than individual doctors. *See*, e.g., <u>Rostock v. Anzalone</u>, 904 A.2d 943, 946 (Pa. Super. Ct. 2006) (hospital); <u>Gondek v. Bio-Medical Applications of Pa., Inc.</u>, 919 A.2d 283, 289 (Pa. Super. Ct. 2007) (dialysis center); and <u>Yee v. Roberts</u>, 878 A.2d 906, 914 (Pa. Super. Ct. 2005) (dental professional partnership.)  In this case, Plaintiff filed suit alleging corporate negligence[4] against UPMC on March 25, 2008, and filed a certificate of merit on May 21, 2008 (Docket No.

---

[4]  A hospital is liable under the doctrine of corporate negligence "if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." <u>Maresca v. Mancall</u>, CA No. 01-5355, 2003 U.S. Dist. LEXIS 11968, *7, n.3 (E.D. Pa. June 20, 2003), quoting <u>Thompson v. Nason Hosp.</u>, 591 A.2d 703, 707 (Pa. 1991). "This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party." <u>Thompson, id.</u> These duties include (1) "a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;(2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients." <u>Id.</u> (internal citations omitted.)  To establish a claim for corporate negligence, the plaintiff must show:  (1) the defendant deviated from the proper standard of care; (2) the hospital had actual or constructive knowledge of the defect or procedures which created the harm; and (3) the hospital's negligence was a substantial factor in causing harm to the patient.  In addition, where the negligence is not obvious, the plaintiff must introduce expert testimony to establish to a reasonable degree of medical certainty the breach of duty and proximate cause elements. <u>Maresca</u>, <u>id.</u> (internal citations and quotations omitted.) As Plaintiff points out, UPMC has not objected to her claim of corporate negligence on any grounds other than failure to file the proper certificate of merit. (Plf.'s Resp. at 4.)

9), within the 60 day limit. That certificate of merit satisfies Rule 1042.3(a)(2) in that it states in relevant part:

> The claim that the Defendant deviated from acceptable professional standards is based on allegations that **other licensed professionals for whom the Defendant is responsible** deviated from acceptable professional standards. An appropriately licensed professional has supplied a written statement to Plaintiff's counsel indicating that there is substantial evidence to conclude that the care, skill and/or knowledge exercised and/or exhibited by these other licensed professionals fell outside acceptable professional standards in the treatment, practice or work that is the subject of the complaint. It was this conduct that was the cause in bringing about the harm complained [sic].

(Docket No. 9 at 1, emphasis added.)

Defendant argues that this language applies only to vicarious liability claims against a defendant whereas Plaintiff's complaint alleges only direct liability on the part of the hospital. The Pennsylvania rules provide that where a plaintiff has alleged multiple liability theories, a plaintiff must file either separate certificates for each theory or a single COM listing both theories. Because Plaintiff failed to file the appropriate certificate, i.e., one which incorporates the language of Rule 1042.3(a)(1), specifically, that "the care, skill or knowledge exercised or exhibited in the treatment . . . that is the subject of the complaint, fell outside acceptable professional standards," Plaintiff's claim of corporate negligence must be dismissed as a matter of law. (Def.'s Brief at 3-4, *citing* Stroud v. Abington Mem. Hosp., 546 F. Supp.2d 238 (E.D. Pa. 2008).)

11

Plaintiff concedes that the COM she filed contains language pertaining only to a claim of vicarious, not direct, liability and that she has not raised a claim of vicarious liability against UPMC. (Plf.'s Resp. at 3-4.) However, she asserts there are four reasons the motion to dismiss her corporate negligence claim should not be granted. First, the COM was filed in good faith and she "believed that the context of her Complaint was read into the language of this certificate," thus, at most, the incorrect COM was a "procedural mistake." Second, this "misstep" has not prejudiced UPMC in any way[5] and UPMC has not challenged the corporate negligence claim on other substantive grounds. (Id. at 4.) Third, because the statute of limitations on her claims has not yet run, Plaintiff could refile the corporate negligence claim and the proper COM; however, if the Court were to allow Plaintiff to file the correct COM, unnecessary delay and "paper shuffling" could be

---

[5] Because we decide this issue on other grounds, we need not address the "no prejudice to defendant" argument in detail. However, we note in passing that although the court in Scaramuzza v. Sciolla, 345 F. Supp.2d 508, 511 (E.D. Pa. 2004), indicated that the defendants needed to establish that they had been prejudiced by the failure to comply with Rule 1042.3, other courts have considered this issue irrelevant. See, e.g., Hartman v. LSCI-Allenwood, CA No. 04-209, 2005 U.S. Dist. LEXIS 40766, *11-*12 (M.D. Pa. May 27, 2005), and Helfrick v. UPMC Shadyside Hospital, 65 Pa. D. & C.4th 420, 424-425 (Allegheny Co. 2003) (If a court required a defendant to show prejudice in order to withstand a petition to open a judgment of non pros against a plaintiff who had failed to timely file the COM, "the petition would almost always be granted. Defendants are not going to be able to show that they were prejudiced by the late filing of a certificate of merit regardless of whether the delay involves 10 days, 30 days, or 90 days. Consequently, the use of a prejudice standard would eliminate the rule's deadlines for filing certificates of merit.")

avoided.  Finally, Plaintiff has provided the underlying expert opinion which supports a claim of direct liability, despite the language of the COM.  (Id. at 5.)

In Stroud v. Abington Mem. Hosp., the case relied upon by UPMC, the plaintiff's decedent entered the hospital for a total right knee replacement and developed complications which led to his death six days later.  His son subsequently sued both a number of doctors who were involved in his father's care and the hospital where the surgery was performed; one claim against the hospital was corporate negligence.  Abington moved to dismiss this claim, arguing that not only had Stroud failed to state a claim for corporate negligence, he had failed to file the correct COM.  As in this case, a COM which was timely filed against the hospital pertained to vicarious, rather than direct, liability.  Stroud, 546 F. Supp.2d at 240-243.

The district court noted the plaintiff had used a form document provided in Rule 1042.8, which incorporates the three situations contemplated by Rule 1042.3, and allows the plaintiff or counsel to simply check the relevant box or boxes.  The first COM which was filed within the 60 days had checked only the box pertaining to vicarious liability despite the fact that Stroud had raised claims of both vicarious and direct liability in his complaint.  Although Stroud later filed an amended COM which properly referred to direct professional liability, that COM had

13

been filed more than 60 days after the complaint. The court held that although the plaintiff had adequately pled his corporate negligence claim, it was "nonetheless obligated to dismiss that claim without prejudice for his failure to timely comply with the COM requirement." Id. at 245.

In arriving at this conclusion, the district court relied extensively on the recent Pennsylvania Supreme Court case of Womer v. Hilliker, 908 A.2d 269 (Pa. 2006). There, the Supreme Court had granted allocatur to consider the limited question of whether Rule 1042.3 was subject to equitable exceptions, as the Superior Court had held. Womer had failed to file any form of COM, but instead provided the defendant with a copy of the expert's report on which such a certificate would normally be based. The Womer Court concluded there was a difference between "wholesale non-compliance" with the Rule, e.g. failing to file any COM, as compared to "substantial compliance amounting to 'a misstep when attempting to do what any particular rule requires.'" Stroud, 546 F. Supp.2d at 251, *quoting* Womer, 908 A.2d at 276. In the former case, the mandatory language of Rule 1042.3 offered no relief to a plaintiff who completely failed to timely file the COM. On the other hand, the Womer Court specifically held that Pennsylvania Rule of Civil Procedure 3051[6] allowed consideration of equitable factors in

---

[6] Rule 3051 pertains to a petition to open a judgment of *non pros* and specifically provides:
[continued]

14

failing to timely file the proper COM. Stroud, id. at 251-252. The Supreme Court held that the Superior Court had abused its discretion by accepting the excuse the plaintiff gave for not filing a COM - his belief that he did not need to do so since he had provided the underlying report - and rejected numerous lower Pennsylvania court decisions which had liberally interpreted Rule 1042.3 or had excused non-compliance under the catch-all provision of Pa.R.Civ.P. 126.[7] Womer, 908 A.2d at 278-280.

In light of the strict interpretation of Rule 1042.3 in Womer, the Stroud court concluded it was compelled to dismiss the plaintiff's corporate negligence claim without prejudice, but was equally compelled to allow him to present a "reasonable explanation or legitimate excuse for non-compliance" with the COM requirement and that "equitable considerations may excuse noncompliance in the appropriate case." Stroud, 546 F. Supp.2d at 256. As an example

---

(a)  Relief from a judgment of *non pros* shall be sought by petition. All grounds for relief, whether to strike off the judgment or to open it, must be asserted in a single petition.
(b)  If the relief sought includes the opening of the judgment, the petition shall allege facts showing that
     (1)  the petition is timely filed,
     (2)  there is a reasonable explanation or legitimate excuse for the inactivity or delay, and
     (3)  there is a meritorious cause of action.
Pa.R.Civ.P. 3051.

[7] Rule 126 provides that "[t]he rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.Civ.P. 126.

15

of such a legitimate excuse, the court suggested "evidence establishing that Plaintiff's counsel indeed had in hand at the time of filing the original COM. . .a written statement by an appropriate licensed professional attesting to a reasonably supported direct liability corporate negligence claim." Id.

Less than a month later, the district court revisited this question after the plaintiff had moved for reinstatement of the corporate negligence claim. See Stroud v. Abington Mem. Hosp., CA No. 06-4840, 2008 U.S. Dist. LEXIS 38971 (E.D. Pa. May 13, 2008). The plaintiff continued to argue that the COM he had initially filed substantially complied with the requirements, but did not attempt to offer an explanation or excuse for his non-compliance. He also argued that his counsel had simply failed to check the two applicable boxes and that a new COM filed within 60 days of his amended complaint cured any defect in his original COM or otherwise constituted compliance. Id. at *7-*8. After considering these arguments and the fact they were inconsistent with those he had previously offered, the court held that Stroud had failed to establish a reasonable explanation or legitimate excuse for noncompliance with Rule 1042.3 and therefore denied his motion to reinstate the corporate negligence claim. Id. at *11.

UPMC argues that based on Stroud, Plaintiff's corporate negligence claim "must be dismissed as a matter of law." (Def.'s Brief at 4.) As a threshold matter, we note that a decision from

16

the Eastern District of Pennsylvania is not binding on this court. *See* Facenda v. N.F.L. Films, Inc., 488 F. Supp.2d 491, 507, n.5 (E.D. Pa. 2007) (district court decisions, including those affirmed without opinion by the circuit court of appeals, are not binding on courts in other districts.) Rather, opinions from sister district courts are "entitled to careful consideration and some deference." Magwood v. French, 478 F. Supp.2d 821, 831 (W.D. Pa. 2007) (Hardiman, J.)

While this Court could follow Stroud, dismiss the corporate negligence claim without prejudice, and allow Plaintiff to offer a reasonable explanation for her failure to use the language in her COM which relates to a claim for direct liability, we find such steps would only delay final resolution of this matter. Plaintiff has provided the affidavit of her expert, Dr. Nathaniel Perryman Collins, Jr. (Plf.'s Resp., Exhibit 1.) This affidavit is dated May 12, 2008, some 10 days prior to the date on which the COM was filed. The affidavit identifies "three systemic breaches in the standard of care" provided by UPMC to Mr. Weaver and some six specific instances in which the hospital failed to adequately supervise its staff, failed to enforce an established chain of command, or failed to follow established procedures, each of which represented a deviation from the proper standard of care. In short, this is exactly the type of evidence the Stroud court implied would support a claim of direct corporate liability.

The Court's review of this document leads to the conclusion that it supports a claim for direct liability on the part of UPMC as opposed to vicarious liability for the acts of the hospital's agents. That is, although the COM itself recites the language of a vicarious liability claim, e.g., "allegations that other licensed professionals for whom the Defendant is responsible deviated from acceptable professional standards," there are no such allegations in Plaintiff's Complaint, nor does Dr. Collins's affidavit support such allegations. While the COM filed by Plaintiff's counsel may reflect an egregious lack of attention to detail or knowledge of Pennsylvania law, we conclude that Plaintiff has substantially complied with the requirements of Rule 1042.3.

Moreover, under Pennsylvania law, involuntary dismissal under Rule 1042 is not dismissal with prejudice. *See* Scaramuzza v. Sciolla, 345 F. Supp.2d 508, 511 (E.D. Pa. 2004) ("Unlike dismissal with prejudice, the entry of judgment *non pros* is a default judgment that does not bar the plaintiff from commencing another suit upon the same cause of action.") Therefore, if a claim is dismissed for failure to properly file the COM and the statute of limitations has not yet run, the plaintiff may voluntarily withdraw her suit and refile. Moore v. Luchsinger, 862 A.2d 631, 634, n.3 (Pa. Super. Ct. 2004), *citing* Helfrick v. UPMC Shadyside Hospital, 65 Pa. D. & C.4th 420, 428 (Allegheny Co. 2003) (Wettick, J.), for the principle that entry of *non pros* "is not *res judicata*, and

18

therefore, does not bar the plaintiff from commencing another action based upon the same cause of action within the applicable statute of limitations period;" *see also* White v. Behlke, 69 Pa. D. & C.4th 353, 371-372 (Lackawanna Co. 2004) ("if a judgment of *non pros* is entered against a plaintiff pursuant to Pa.R.C.P. 1042.6, the plaintiff may nonetheless commence a second action against the same health care provider(s) provided that the applicable statute of limitations has not yet expired"); and Keybank Nat'l Ass'n, 2005 U.S. Dist. LEXIS 29936 at *41-*45 (declining to dismiss legal malpractice claim because Plaintiff could re-file within the statute of limitations and because other claims remained viable.) Here, Plaintiff's claims accrued with her husband's death on December 14, 2006, allowing her at least five months in which to file a new suit under the statute of limitations for tort claims set out in 42 Pa. Cons. Stat. Ann. § 5524.[8]

In sum, we find the situation here distinguishable from those in Womer and Stroud. Plaintiff has demonstrated substantial compliance with the COM requirement, thus falling within the ambit of "a misstep when attempting to do what any particular rule requires," rather than a wholesale failure to take the necessary

---

[8] This circumstance is a further distinction from Stroud, where a later opinion granting partial summary judgment in favor of some defendants points out that Stroud had filed his suit exactly two years from the date of his father's death. See Stroud v. Abington Mem. Hosp., CA No. 06-4840, 2008 U.S. Dist. LEXIS 38999, *20 (E.D. Pa. May 13, 2008). Thus, there was no opportunity for Stroud to withdraw his suit and refile within the statute of limitations for medical malpractice or corporate negligence claims.

19

action, or doing nothing. The underlying purpose of Rule 1043.2 is to prevent the filing of frivolous professional liability claims. Almes v. Burket, 881 A.2d 861, 866 (Pa. Super. Ct. 2005). In the analogous situation of opening a default judgment, the Pennsylvania Superior Court has emphasized that "errors of counsel which indicate an oversight rather than a deliberate decision not to defend, have been held to constitute sufficient legal justification to open a default judgment." Id. at 865-866 and n.3. Defendant has not attacked the corporate negligence claims on substantive grounds by arguing that it is otherwise defective. While the text of the COM did not correspond to the claim of direct liability alleged in the Complaint – an error we do not believe should be condoned lightly – such inconsistency does not require dismissal. Defendant's motion to dismiss Count II, the corporate negligence claim for failure to file a proper certificate of merit, is therefore denied.

B.    Failure to State a Claim for
      Negligent Infliction of Emotional Distress

Pennsylvania courts recognize the tort of negligent infliction of emotional distress ("NIED") in four sets of circumstances. The seminal case involving the plaintiff as "bystander" is Sinn v. Burd, 404 A.2d 672 (Pa. 1979). There, the Pennsylvania Supreme Court both recognized the tort and established the criteria necessary to state a cause of action therefor:

1.    the "plaintiff was located near the scene of

20

the accident as contrasted with one who was a distance away from it[;]

2.     "the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence [; and]

3.     the "plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship."

Sinn, 404 A.2d at 685 (plaintiff witnessed her daughter being run down by defendant's vehicle.)

The second category of NIED cases concern those where the defendant owes the plaintiff a pre-existing contractual or fiduciary duty and breach of that duty results in physical injuries to the plaintiff. See, e.g., Brown v. Philadelphia College of Osteopathic Med., 674 A.2d 1130, 1136 (Pa. Super. Ct. 1996), finding the plaintiff had stated a cause of action against hospital which breached its duty of care by failing to provide proper emergency room treatment during her miscarriage; and Corbett v. Morgenstern, 934 F.Supp. 680, 683 (E.D. Pa. 1996), where the court held that because the defendant psychologist owed his patient, Corbett, a professional duty of care analogous to a fiduciary duty, the plaintiff had stated a cause of action for NIED after Morgenstern initiated and continued an unwanted sexual relationship with her during the course of therapy.

Third, Pennsylvania recognizes NIED in the context of negligent omissions as well as traumatic accidents. See, e.g.,

21

Love v. Cramer, 606 A.2d 1175, 1178 (Pa. Super. Ct. 1992) *appeal denied*, 621 A.2d 580 (Pa. 1992), where the court held that the plaintiff's "observance" of the lack of medical care provided to her mother by the defendant doctor, together with her presence during the mother's heart attack, was enough to sustain a claim for NIED; and Turner v. Medical Ctr., 686 A.2d 830, 834 (Pa. Super. Ct. 1996), *appeal denied*, 698 A.2d 596 (Pa. 1997), where the plaintiff had stated a claim for NIED based on the fact that she had been forced to deliver her sister's still-born fetus after staff at the defendant medical center failed to help the sister for more than 7 hours despite repeated requests.

Finally, the court in Brown identified a fourth way sustain a claim for negligent infliction of emotional distress, i.e., the "impact rule," where the plaintiff "sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff." Brown, 674 A.2d at 1135-1136, noting that compelling the plaintiff mother to hold her stillborn child was physical impact sufficient to state a cause of action; *see also* Stoddard v. Davidson, 513 A.2d 419, 422 (Pa. Super. Ct. 1986), holding that the lurching, jostling and jarring of the plaintiff's car when he ran over a corpse left in the road by defendant following a hit and run accident was physical impact sufficient to support a claim for NIED.

In all four types of NIED cases, the plaintiff must have experienced physical injury as a result of having been exposed to the traumatic event. <u>Houston v. Texaco, Inc.</u>, 538 A.2d 502, 504 (Pa. Super. Ct. 1988). Initially, physical injury did not include conditions manifested only as "transitory, non-recurring" mental or emotional problems, but under current Pennsylvania case law, a plaintiff who can show such problems as long-term nausea or headaches, repeated hysterical attacks, nightmares, depression, stress, or anxiety which require psychological treatment has demonstrated physical injury sufficient to sustain a cause of action. <u>Love</u>, 606 A.2d at 1179; *see also* <u>Crivellaro v. Pa. Power & Light Co.</u>, 491 A.2d 207, 210 (Pa. Super. Ct. 1985), citing cases.

Here, UPMC does not argue that Plaintiff has failed to establish her close relationship with the decedent, that she was not with him during the period leading up to his death, or that she subsequently experienced physical injury as a result. Defendant argues instead that Count III must be dismissed for two specific reasons. First, Plaintiff has failed to establish a key element of negligent infliction of emotional distress, that is, there is no allegation that she observed "an identifiable traumatic incident." (Def.'s Brief at 6, *citing* <u>Cathcart v. Keene Industrial Insulation</u>, 471 A.2d 493, 507 (Pa. Super. Ct. 1984), which rejected the wife's claim that defendant was liable for NIED when there was no observable traumatic event, although she witnessed her husband's

long illness preceding his death from asbestosis.) Instead, according to UPMC, Ms. Weaver has alleged only that she was at his bedside during his treatment and that she suffered "a direct emotional impact" sometime during that period. Second, Defendant argues that Plaintiff has failed to allege that she understood an accident was occurring at the time it was witnessed. (Def.'s Brief, id.)

Plaintiff, on the other hand, argues that Cathcart and the other cases cited by Defendant in support of its motion to dismiss, Mazzagatti v. Everingham, 516 A.2d 672 (Pa. 1986), and Bloom v. DuBois Regional Medical Center, 597 A.2d 671 (Pa. Super. Ct. 1991),[9] are distinguishable because the plaintiffs in those cases did not witness their decedents being injured. In fact, she argues, Bloom and its progeny, in particular Kapacs v. Martin, CA No. 04-5151, 2005 Pa. Dist. & Cnty. Dec. LEXIS 506 (Lackawanna Co., July 12, 2005), support her claims of NIED. (Plf.'s Resp. at 6-8.)

Contrary to Defendant's argument that Plaintiff did not observe "an identifiable traumatic incident," Plaintiff alleges

___

[9] In Bloom, the Pennsylvania Superior Court refused to allow a NIED claim to proceed when the plaintiff alleged that he had entered his wife's room on the psychiatric ward of the defendant hospital shortly after she attempted to hang herself. The court concluded that the husband could not recover NIED damages because he had not witnessed a discrete moment in time when the defendant was negligent. However, it specifically noted it did not intend to exclude every instance in which a plaintiff alleged he had observed a negligent omission by a defendant rather than an overt action, and gave the hypothetical example of a husband observing the failure of hospital emergency room staff to attend to his wife and the injuries to her which consequently ensued. Bloom, 597 A.2d at 683.

24

that she was with her husband during most of the time he was being treated at UPMC and was at his bedside when he died shortly after the second surgery. (Complaint, ¶¶ 6, 14, 17, 21, 26, 34, 36.) In Love, the Pennsylvania Superior Court, noting that the plaintiff had been present both when the defendant did not provide medical treatment for her mother's possible cardiac problems and when her mother experienced a fatal heart attack, stated:

> It is possible that [Love] will be able to prove that Dr. Cramer was negligent, and that his negligence was the proximate cause of her mother's death. Appellant's observance of the lack of medical care, along with her observance of her mother's heart attack is enough to sustain her claim for negligent infliction of emotional stress. . . . This is not the simple situation wherein the plaintiff did not observe the traumatic event, but nevertheless sought to recover for emotional distress. Rather appellant witnessed the traumatic event, and the earlier negligence of the doctor. Her recovery, if proven, would be based upon the fact that her emotional injury was due to her first hand observation of her mother's heart attack, an event caused by Dr. Cramer's negligence, which she had also witnessed.

Love, 606 A.2d at 1178, stating that the facts of the case were "much like" the scenario envisioned in Bloom.

We conclude Plaintiff has sufficiently alleged that she witnessed the treatment her husband received (or did not receive) while at UPMC and that she experienced firsthand the traumatic event of his death.

As to Defendant's second argument that Plaintiff has failed to allege she contemporaneously understood that the treatment she was observing was negligent, we find the case law in Pennsylvania somewhat inconsistent on this point. In some cases, the court has

25

required not only allegations that the plaintiff was present when the medical provider did or did not treat the patient, but that she questioned that decision at the time. In McElwee v. Leber, 57 Pa. D. & C.4th 378 (Lycoming Co. 2002), for instance, the parents of a 10-year old girl observed over a period of more than four days the failure of several doctors and emergency room staff to diagnose and treat the strep infection that led to her death. The parents alleged they had questioned the medical care provided to their daughter and were aware, or became aware at or near the time of her death, that the defendants had failed to provide reasonable care, caused injury, or increased the risk of harm to the child. They also alleged that as a result of the defendants' negligence, they experienced or observed the child's deterioration and eventual death, a discrete or identifiable traumatic event. Id. at 382-389.[10] The defendants argued the parents had failed to state a claim for NIED because they did not allege that they contemporaneously realized that each act of care was being provided negligently. The court held that the allegations that the parents had questioned the level of care on several occasions was sufficient to satisfy the "awareness" element. In short,

> To put a burden on plaintiffs in a case such as this to
> be able to say that they were fully aware at the time the

---

[10] It appears neither parent directly observed the child's death but had been forced by emergency room personnel to leave the room during the last phases of treatment and were told by medical staff, "shortly after" her death, that she had died. McElwee, 57 Pa. D. & C.4th at 387.

> medical care was provided that it was negligent is
> unrealistic and also not required. What is required is
> that plaintiffs plead an awareness that what was
> happening to their daughter was wrong and that they
> recognized that there was something wrong or lacking at
> the time that the care was provided.

McElwee, 57 Pa. D. & C.4th at 396. *See also* Blair v. Mehta, 67 Pa. D. & C.4th 246, 267 (Lycoming Co. 2004), holding that the plaintiff had failed to state a claim for NIED where he did not allege that he was aware at the time "there was something was wrong" with the medical care provided by the defendant to his daughter, even though he had "expressed concern" to the doctor about the treatment.[11]

However, in other cases, it has been sufficient for the plaintiff simply to have observed the patient's pain, suffering and eventual death while in the care of the medical facility. For instance, in Kapacs v. Martin, a case relied upon by Plaintiff, Donna Kapacs's husband and daughter were present in the hospital when she experienced intense prolonged pain both before and after a cardiac catheterization and when she went into cardiac arrest allegedly as a result of the hospital's failure to provide prompt medical attention. Kapacs v. Martin, 2005 Pa. Dist. & Cnty. Dec. LEXIS 506 at *14-*15. The court allowed the family to proceed with their NIED claims based on their "observance" of the hospital's omission even though the opinion does not refer to any objections by the family to the treatment Kapacs received at the time it was being given. *See also* Raspaldo v. Sacred Heart Hosp., 54 Pa. D. & C.4th 432, 439-440 (Lehigh Co. 2000) (plaintiffs satisfied second

---

[11] We note that both McElwee and Blair were decided by the same judge and that research by the Court has failed to disclose other courts which have reached the same conclusion.

requirement of "sensory and contemporaneous observance" of the precipitating injury when they personally witnessed the result of the alleged negligence, namely, the death of their child and the events alleged to have caused the death, e.g., improper use of forceps and vacuum during delivery and an attempt at natural delivery when Cesarean section was allegedly required); Leab v. Chambersburg Hosp., CA No. 04-0504, 2005 U.S. Dist. LEXIS 35697, *11-*12 (M.D. Pa. Jan. 6, 2005) (parents who witnessed failure of hospital staff to call physicians in a timely manner either to assist in difficult childbirth or when their baby suffered decelerations in heart rate had sufficiently pled contemporaneous observance of a negligent act or omission); and Plaisted v. Geisinger Med. Ctr., CA No. 01-1074, 2002 U.S. Dist. LEXIS 24955, *9 (M.D. Pa. Oct. 15, 2002) (plaintiff who alleged that she witnessed defendant's failure to monitor her son's serum sodium levels, his deterioration over two days prior to his death, and the staff's unsuccessful attempts at resuscitation would be allowed to proceed with NIED claim.)

Defendant offers no support for its contention that in NIED cases involving negligent omissions, the plaintiff must allege contemporaneous understanding that the care provided was not up to professional standards or was otherwise negligent. Given the relative paucity of Pennsylvania law on this question and the inconsistencies among cases, we shall allow Plaintiff's claim for

28

negligent infliction of emotional distress to go forward. Defendant's motion to dismiss Count III of the Complaint is denied without prejudice.

## C. Punitive Damages Claim

Plaintiff's prayer for relief in Count II of the Complaint concerning corporate negligence includes punitive damages based on UPMC's "gross, careless, indifferent and negligent conduct." Defendant argues that this language fails to support a claim for punitive damages which are recoverable only in instances where the defendant's conduct is outrageous, i.e., conduct which results from an "evil motive or reckless indifference to the rights of others" and that claims amounting to no more than ordinary or even gross negligence are insufficient. (Def.'s Brief at 7-9.)

It is well-established in Pennsylvania law that punitive damages are an "extreme remedy" available in only the most exceptional cases. As the Pennsylvania Supreme Court summarized,

Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others. . . . A defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent. Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to intentional, willful, wanton or reckless conduct.

29

<u>Phillips v. Cricket Lighters</u>, 883 A.2d 439, 445-446 (Pa. 2005) (internal citations and quotations omitted.)

Section 500 of the Restatement (Second) of Torts further provides that:

> the actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

<u>Edmonson v. Bug Stop, Inc.</u>, CA No. 00-2379, 2001 U.S. Dist. LEXIS 15865, *12 (E.D. Pa. Aug. 15, 2001); *see also* <u>Hutchison v. Luddy</u>, 870 A.2d 766, 771 (Pa. 2005).

Under Pennsylvania law, "a punitive damages claim must be supported by evidence sufficient to establish that (1) the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." <u>Arias v. Decker Transp.</u>, CA No. 06-638, 2008 U.S. Dist. LEXIS 11586, *8-*9 (M.D. Pa. Feb. 14, 2008), *citing* <u>Hutchinson</u>, <u>id.</u> at 772.

Here, Plaintiff has alleged UPMC deviated from the standard of care to such a significant extent that it created an unreasonable risk of physical harm to her husband. For instance, UPMC failed to establish proper medical standards and procedures; failed to take corrective actions to remedy defects in its procedures; failed to ensure that its staff complied with those policies; and failed to

properly select, train, and supervise its employees charged with the care of Mr. Weaver. Plaintiff further alleges that these deviations "were such that [UPMC] must have known or should have known that Mr. Weaver was bleeding internally and failed to provide appropriate and timely intervention." (Complaint, ¶ 50.)

The ultimate determination of whether punitive damages are appropriate in this case is a question for the finder of fact. *See* G.J.D. v. Johnson, 713 A.2d 1127, 1131 (Pa. 1998) (jury determines award of punitive damages and amount thereof); *see also* Anderson v. Nationwide Ins. Enter., 187 F. Supp.2d 447, 460 (W.D. Pa. 2002) ("Under Pennsylvania law, the question of punitive damages is usually determined by the trier of fact, and the Court is to decide the issue only when no reasonable inference from the facts alleged supports a punitive award.") If Plaintiff can establish that UPMC knew of its shortcomings in the level of care provided to Mr. Weaver - for example, its failure to perform the ultrasound which had been ordered on admission or to take immediate action when hospital staff had been made aware of his severe abdominal distention - yet did not take corrective action, a reasonable finder of fact could conclude Defendant had failed to do an act it had a duty to do despite knowing its failure created an unreasonable risk of physical harm substantially greater than mere negligence and thus award punitive damages.

Defendant's motion to dismiss the claims for punitive damages

in Count II is denied without prejudice and may be reasserted at a later stage in this litigation.

An appropriate Order follows.

William L. Standish
United States District Judge

Date: July 29, 2008